UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TAMIKA STEWART and BERNARD WASHINGTON,

|  |  |
|---|---|
| Plaintiffs, | AMENDED COMPLAINT |
| -against- | Docket No. 15 CV 3389 (RRM) (RER) |
| THE CITY OF NEW YORK, POLICE OFFICER AVINASH SURAJBALI (Shield No. 30256, Assigned to the 75th Precinct on March 14, 2014), SERGEANT GRIGOR BARDASH (Tax No. 927780, Assigned to the 75th Precinct on March 14, 2014), and POLICE OFFICERS JOHN DOES Nos. "1", "2" and "4" to "10" (Actual Names Unknown, intended to be the Police Officers Assigned to the 75th Precinct on March 14, 2014 Who were Engaged in the Arrest of March 14, 2014), | THE PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES |

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

The Plaintiffs Tamika Stewart and Bernard Washington, by their undersigned attorney,

Matthew A. Kaufman, Esq., do state and say as and for their Amended Complaint:

## JURISDICTION

1.      The jurisdiction of this Court is invoked by the Plaintiff pursuant to Title 28 of the

United States Code, Sections 1331, 1343(3) & (4) and 1367.

2.      Venue is properly laid in the Eastern District of New York, 28 U.S.C. §1391(b):

      a.      The claims initially arose in this District; and,

      b.      The Plaintiffs reside in this District.

## JURY DEMAND

3.      The Plaintiffs demand a trial by jury on all issues pursuant to the Seventh

Amendment to the United States Constitution and Fed. R. Civ. P. 38.

## NATURE OF PROCEEDINGS

4.   This is a proceeding for compensatory and punitive damages owing to the

Plaintiffs as a result of violations of Civil Rights under the Fourth and Fourteenth

Amendments to the Constitution of the United States and under Federal law,

particularly 42 U.S.C. § 1983. Supplemental claims are also asserted against

Defendants pursuant to 28 U.S.C. § 1367.

## PARTIES

5.   The Plaintiff, Tamika Stewart is a resident of Kings County, City and State of

New York.

6.   The Plaintiff, Bernard Washington is a resident of Kings County, City and State of

New York.

7.   The Plaintiff, Tamika Stewart is a person of African-American descent with dark

skin.

8.   The Plaintiff, Bernard Washington is a person of African-American descent with

dark skin.

9.   Defendant City of New York [hereinafter referred to as "City"]:

a.   At all times material hereto is a Municipal Corporation, duly formed and
created pursuant to the laws and statutes of the State of New York.

b.   At all times material hereto, by its agents, servants and employees,
including members of the New York City Police Department [hereinafter
"NYPD"], was responsible for the training and instruction of individuals
employed by the NYPD.

10.   Defendant Police Officer Avinash Surajbali at all times material hereto, is a Police

Officer in the employ of Defendant City and a member of, or otherwise assigned

-2-

to the NYPD; was assigned shield number 30256, and assigned to the 75th
Precinct [hereinafter referred to as "Surajbali"].

11.     Defendant Sergeant Grigor Bardash at all times material hereto, is a Police
        Sergeant in the employ of Defendant City; a member of, or otherwise assigned to
        the NYPD; was assigned Tax number 927780; and assigned to the 75th Precinct
        [hereinafter referred to as "Bardash"].

12.     At all times material herein, Defendants Police Officers John Doe Nos. "1", "2"
        and "4" to "10" (Actual Names Unknown, who, upon information and belief were
        members of the NYPD, assigned to the 75th Precinct on March 14, 2014 and who
        were engaged in the entry of the Plaintiffs' apartment and arrest at the Plaintiff,
        Bernard Washington on March 14, 2014.

13.     The Plaintiff has complied with all conditions precedent under New York Law:

        a.      On April 29, 2014, the Plaintiff Tamika Stewart served and filed a Notice
                of Claim upon Defendants in full compliance with Section 50-e of the
                N.Y. General Municipal Law, **Exhibit "A"**;

        b.      On May 15, 2015, the Supreme Court of the State of New York, Kings
                County (Hon. Lara J. Genovesi, J.) granted the Plaintiff Tamika Stewart
                leave:

                        "to file an amended notice of claim to change the accident
                        date from 3/10/14 to 3/14/14"

                **Exhibit "B"**;

        c.      On June 10, 2015, the Plaintiff Tamika Stewart served and filed an
                Amended Notice of Claim upon Defendants in full compliance with
                Section 50-e of the N.Y. General Municipal Law and the May 15, 2015
                Court Order, **Exhibit "C"**;

-3-

      d.      On November 13, 2014, the Plaintiff Bernard Washington served and filed a Notice of Claim upon Defendants in full compliance with Section 50-e of the N.Y. General Municipal Law concerning a claim, **Exhibit "D"**;

      e.      Prior to the commencement of this action at least 30 days have elapsed since the service of the said Notice of Claim pursuant N.Y. General Municipal Law § 50-e, and the adjustment or payment has been neglected and/or refused.

      f.      The Supplemental State claims in this action are timely commenced within one-year and 90-days after the happening of the events herein pursuant to N.Y. General Municipal Law Section § 50-i.

14.      Defendant City is and was at all times responsible for the policies, practices and/or customs of the NYPD, a municipal agency of Defendant City. Defendant City is and was at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the Police Officers it employed, including the Defendants Police Officers herein.

15.      Defendant City is responsible, *inter alia*, for the management, administration, conduct and supervision of all personnel employed by the NYPD to protect the safety of the public and the property of the public, such as the Plaintiffs herein.

16.      Each and every act of Defendants alleged herein was done by Defendants, and each of them as individuals, or through their employees, servants and/or agents, under color and authority of the laws, statutes, ordinances, customs and usages of the State of New York, the United States of America, and under their offices with the City of New York.

17.      All of the acts of the individual Defendants alleged herein were done while acting within the scope of their employment with Defendant City and/or the NYPD.

18.    All of the acts of the individual Defendants alleged herein were done while acting in furtherance of their employment by Defendant City and/or the NYPD.

19.    Hereinafter, Defendants Police Officer "John Does Nos. '1' '2' and '4' through '10'" may be collectively referred to as the "Defendant Police Officers."

**BACKGROUND FACTUAL ALLEGATIONS**

20.    At all times material hereto, the Plaintiff, Tamika Stewart resided in the County of Kings, City and State of New York.

21.    At all times material hereto, the Plaintiff, Bernard Washington resided in the County of Kings, City and State of New York.

22.    At all times material hereto in and during 2014:

   a.    55 Malta Street, Apartment 4B, Brooklyn, New York is and was a residential apartment [hereinafter, "Apartment 4B"].

   b.    The Plaintiff, Tamika Stewart was a tenant holding a lease to "Apartment 4B".

   c.    The Plaintiff, Bernard Washington was the father of two who resided with Tamika Stewart in "Apartment 4B".

23.    In and about March, 2014, the Plaintiff Tamika Stewart would invite and request the Plaintiff, Bernard Washington to visit and stay at "Apartment 4B".

24.    In and about March, 2014, the Plaintiff, Bernard Washington, would stay and reside for periods of time at "Apartment 4B".

25.    In and about March, 2014, the Plaintiff, Bernard Washington, was lawfully present, and at times stayed and resided at "Apartment 4B" with his two children, who also resided at that address along their mother, the Plaintiff, Tamika Stewart.

-5-

26.     Upon information and belief, Dominique Shehee [hereinafter, "Shehee"], was a former paramour of the Plaintiff, Bernard Washington, and a resident of Queens County, had been stalking and harassing the Plaintiff Bernard Washington in and around the at 55 Malta Street, Brooklyn, New York residence in March, 2014.

27.     Upon information and belief, on or about March 10, 2014, Shehee made false statements to Defendant NYPD and unknown members of Defendant NYPD concerning purported conduct by the Plaintiff, Bernard Washington, which these Defendants knew to be false, or should have known to be false at the time they were made.

28.     On or after March 10, 2014, the Plaintiff, Bernard Washington communicated with Defendant Police Officer John Doe No. "1", actual name unknown, concerning conduct by "Shehee" and the claims "Shehee" purportedly made against him.

29.     On or about March 13, 2014, the Plaintiff, Bernard Washington contacted the 75th Precinct in order to follow-up on his earlier conversation he had on March 10, 2014 with Defendant Police Officer John Doe No. "1", at which time he spoke to another person, who transferred the call to a different person, resulting in the Plaintiff, Bernard Washington speaking with Defendant Police Officer John Doe No. "2."

    a.     Defendant Police Officer John Doe No. "2" identified himself as the detective who was handling a complaint by "Shehee."

-6-

b.     The Plaintiff, Bernard Washington offered to come to the 75th Precinct in order to meet and discuss "Shehee's" complaint with Defendant Police Officer John Doe No. "2."

c.     Defendant Police Officer John Doe No. "2" told the Plaintiff, Bernard Washington not to come into the 75th Precinct that day, but to:

> "Come in Monday and enjoy the weekend."

d.     Based on the representations and instructions of Defendant Police Officer John Doe No. "2," the Plaintiff, Bernard Washington believed Defendant Police Officer John Doe No. "2" did not find "Shehee's" complaint concerning him to be credible.

e.     Based on the representations and instructions of Defendant Police Officer John Doe No. "2," the Plaintiff did not go to the 75th Precinct on March 13, 2014.

30.     On or about March 14, 2014, the Plaintiff, Bernard Washington was lawfully present and staying at "Apartment 4B", when he heard a knocking at the front door to the apartment.

a.     The Plaintiff, Bernard Washington, in response to the knocking at the door to "Apartment 4B", asked the person at the door to identify him or herself and was told it was the "super."

b.     The Plaintiff, Bernard Washington, in response to the knocking at the door, looked through the "key-hole" but was unable to see anything in that it was apparently being covered by the person or persons outside "Apartment 4B".

c.     The Plaintiff, Bernard Washington then put the chain latch in place on the door; and opened the top and bottom door locks and began to open the door a slight, couple of inches in order to peek outside through the little crack formed by opening the door, into the hallway on the other side of the door.

d.     While the Plaintiff, Bernard Washington was opening the door a slight, small distance, Defendants "Surajbali" and "Bardash" placed a rod or stick through the open crack in the door of "Apartment 4B", and started to force the door open.

e.   Defendants "Surajbali" and "Bardash" [hereinafter, at times referred to as the "Arresting Officers"] yelled at the Plaintiff, Bernard Washington:

"open the door, open the door"

f.   Defendant "Arresting Officers" while yelling at the Plaintiff, Bernard Washington, began forcing the door open with the rod or stick.

g.   As Defendant "Arresting Officers" were forcing "Apartment 4B's" open, the Plaintiff, Bernard Washington asked Defendant "Arresting Officers" if they had a warrant, but Defendants kept yelling for him to open the door.

h.   Defendant "Arresting Officers" broke the door locks, damaged the door hinges and forced the door open pushing into "Apartment 4B".

31.   Once inside "Apartment 4B", Defendants "Surajbali" and "Bardash" forcefully grabbed the Plaintiff, Bernard Washington and violently threw him to the floor.

32.   While the Plaintiff, Bernard Washington was on the floor, Defendant "Arresting Officers" violently, forcibly pulled the Plaintiff's arms and placed handcuffs tightly around his wrists so as to cause him to suffer significant pain.

33.   Defendant "Arresting Officers" refused to answer the Plaintiff, Bernard Washington's questions for reason he was being arrested.

34.   Defendant "Arresting Officers" refused to answer the Plaintiff, Bernard Washington's requests to see a warrant.

35.   At no time did Defendant "Arresting Officers" produce or show the Plaintiff, Bernard Washington a warrant to either enter the apartment or to arrest him.

36.   After placing the Plaintiff, Bernard Washington in handcuffs, Defendant "Arresting Officers" left him on the floor and proceeded to search throughout "Apartment 4B", causing damage to apartment and its furnishings.

37. After concluding searching the apartment, Defendant "Arresting Officers" left the apartment with the front door broken and brought the Plaintiff, Bernard Washington to the 75th Precinct.

38. The Plaintiff, Bernard Washington told Defendant "Arresting Officers" the handcuffs were too tight on his wrists and were causing him to suffer serious and significant pain.

39. Defendants "Arresting Officers" ignored the Plaintiff, Bernard Washington's requests for assistance to alleviate his pain due to the handcuffs being excessively tight around his wrists.

40. Defendants "Arresting Officers" thereafter brought the Plaintiff, Bernard Washington, from to the Criminal Court for the City of New York, Kings County [hereinafter, "Criminal Court"].

41. On March 14, 2014, the Plaintiff, Tamika Stewart returned to "Apartment 4B" after the Plaintiff, Bernard Washington was arrested by the Defendants.

42. The Plaintiff, Tamika Stewart, after observing the damage to "Apartment 4B", went to the 75th Precinct to report and make a claim for the damage to "Apartment 4B".

43. While at the 75th Precinct, the Plaintiff Tamika Stewart spoke to Defendant "Arresting Officers" concerning the arrest of Bernard Washington at her apartment.

44. While at the 75th Precinct, the Plaintiff Tamika Stewart spoke to Defendant "Arresting Officers" concerning the damage to her door.

-9-

    a.       One of Defendant "Arresting Officers" told her:

> "we can include you in our report, and it will effect
> your job if you're going to question us about your
> door, or you can leave this alone and we won't
> effect your job and include this in the report."

    b.       One of the Arresting Officers admitted to breaking the locks on the door to the Plaintiff, Tamika Stewart's apartment.

    c.       One of the Arresting Officers told the Plaintiff, Tamika Stewart that the damage to the lock was worth only $4.00 or $5.00, and that it was not worth the headache of her complaining about it.

    d.       The other Arresting Officer did not say anything during the conversation with the Plaintiff, Tamika Stewart.

45.     The Plaintiff, Tamika Stewart asked Defendant "Arresting Officers" if they had a

warrant to arrest the Plaintiff, Bernard Washington.

    a.       One of Defendant "Arresting Officers" told the Plaintiff, Tamika Stewart that he did not have a warrant to arrest the Plaintiff, Bernard Washington.

    b.       One of the Defendant "Arresting Officers" told the Plaintiff, Tamika Stewart that he had a complaint.

46.     Defendant "Arresting Officers" never produced any form of warrant to the

Plaintiff, Tamika Stewart.

47.     The Plaintiff, Tamika Stewart asked Defendant "Arresting Officers" how they

knew the Plaintiff, Bernard Washington was in "Apartment 4B":

    a.       One of Defendant "Arresting Officers" told the Plaintiff, Tamika Stewart they heard somebody was in the apartment when then were near "Apartment 4B".

    b.       One of Defendant "Arresting Officers" told the Plaintiff, Tamika Stewart they had kicked the door down because they heard somebody in "Apartment 4B".

48.     On March 15, 2014, the Plaintiff, Bernard Washington was brought to the Criminal Court for the City of New York, Kings County, where he was arraigned and charged with various crimes under the New York Penal Law by a complaint sworn to by Defendant Surajbali under Criminal Court Docket number 2014KN018423, **Exhibit "E"** [hereinafter, the "Criminal Court Complaint"].

49.     The Criminal Court Complaint contained false and untrue allegations as a pretext to justify Defendants' entry into "Apartment 4B", as well as the search, arrest and seizure of the Plaintiff, Bernard Washington.

    a.     Defendant Surajbali personally, or with the assistance of one or more of the Defendant Police Officers, drafted or assisted in drafting a Criminal Complaint against the Plaintiff, Bernard Washington.

    b.     Defendant Surajbali averred and swore to the truth of the Criminal Court Complaint.

    c.     Defendant Surajbali knew that many of the allegations and statements he made in the Criminal Court Complaint were not true, either in whole or part, but were made so as to justify his conduct and the conduct of his fellow Defendant Officer during their warrantless search, arrest and seizure of the Plaintiff, Bernard Washington from inside "Apartment 4B" without the consent of this Plaintiff.

    d.     Defendant Surajbali knew that the allegation against the Plaintiff, Bernard Washington concerning his having resisted arrest in violation of New York Penal Law § 205.30 was not true and unfounded.

    e.     The Plaintiff entered a plea of not guilty to all the charges at the time of his arraignment and the Criminal Court set bail at the time of the Plaintiff, Bernard Washington's arraignment.

    f.     The Criminal Court adjourned the case against the Plaintiff to March 20, 2014, requiring the Plaintiff to appear and attend in Court on that date, as well as subsequent additional dates until it was dismissed on September 16, 2014, **Exhibit "F"**.

-11-

50.     Upon information and belief, Defendant Police Officers Numbers "4", "5", "6", "7", "8", "9" and "10" are additional, Police Officers whose identities are presently unknown to the Plaintiffs, who were engaged and/or otherwise assisted and were involved with the other identified Defendants.

51.     Upon further information and belief, based on the foregoing, Defendants were not only on notice of the above-complained about conditions, but failed or otherwise refused to take action and otherwise implement proper safety mechanisms, including better training, hiring.

### PLAINTIFF TAMIKA STEWART'S FIRST CLAIM FOR RELIEF
**(Violation of Civil Rights, 42 USC § 1983)**

52.     Plaintiffs repeats and realleges each and every allegation in paragraphs "1" to "51" with the same force and effect as if herein more fully set forth.

53.     All of the above Defendant Police Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiffs of their rights, privileges and immunities secured to them by the Constitutions and laws of the United States and New York.

54.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

55.     All of the aforementioned acts deprived the Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

56.     The acts complained of were carried out by the aforementioned individual
        Defendants in their capacities as Police Officers, with all the actual and/or
        apparent authority attendant thereto.

57.     The acts complained of were carried out by the aforementioned individual
        Defendants in their capacities as police officers, pursuant to the customs, usages,
        practices, procedures, and the rules of the City of New York and the New York
        City Police Department, all under the supervision of ranking officers of said
        department.

58.     Defendants, collectively and individually, while acting under color of state law,
        engaged in conduct which constituted a custom, usage, practice, procedure or rule
        of Defendants City and the NYPD which is otherwise forbidden by the
        Constitutions of the United States and the State of New York.

59.     The acts complained of deprived the Plaintiff Tamika Stewart of her rights
        prohibiting Defendants:

        a.      Entering into a private dwelling without obtaining a warrant;

        b.      Entering enter into a private dwelling absent complying with the U.S. and
                New York Constitutions, and related statutes;

        c.      Using excessive force in entering a private dwelling; and,

        d.      Requiring Defendants to treat all private citizens with equal protection
                under the law.

60.     Defendants' violations of the Plaintiff's rights were undertaken under color of the
        U.S. and N.Y. Constitutions, laws, statutes, regulations.

-13-

61.    As a result of the foregoing conduct by Defendants herein, the Plaintiff, Tamika
       Stewart has been damaged in an amount to be determined by this Court, but in no
       event less than One Million ($1,000,000.00) Dollars compensatory damages and
       punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS
       as against the individual defendants.

### PLAINTIFF TAMIKA STEWART'S SECOND CLAIM FOR RELIEF
#### (Violation of Civil Rights, 42 USC § 1983)

62.    The Plaintiff, Tamika Stewart repeats and realleges each and every allegation in
       paragraphs "1" to "51" and "53" to "61" with the same force and effect as if
       herein more fully set forth.

63.    The Plaintiff, Tamika Stewart, had a right to report the conduct by Defendants
       herein regarding the entry into "Apartment 4B".

64.    The Plaintiff, Tamika Stewart, had a right to report the damages to "Apartment
       4B" and to seek compensation for those damages as a result of Defendants'
       conduct, particularly the property damage to "Apartment 4B".

65.    Defendants, through Defendant "Arresting Officers", intimidated and threatened
       the Plaintiff, Tamika Stewart with adverse consequences in the event she reported
       Defendants' conduct and the damage to "Apartment 4B".

66.    Defendants, including the Defendant "Arresting Officers", who by their conduct
       (or lack of action) under color of state law and within the scope of their
       employment, willfully and recklessly disregarded the Plaintiff, Tamika Stewart's
       right to due process of law, as provided under the United States and New York
       State Constitutions.

-14-

67.     All of the above Defendant Police Officers, by their foregoing acts, intentionally
        and willfully acted jointly and severally under color of law, statute, ordinance,
        regulations, customs and practice of the State of New York, to deprive the
        Plaintiff, Tamika Stewart of her rights, privileges and immunities secured to her
        by the Constitutions and laws of the United States and New York.

68.     All of the above Defendant Police Officers, by their foregoing acts, intentionally
        and willfully acted jointly and severally under color of law, statute, ordinance,
        regulations, customs and practice of the State of New York, to deprive the
        Plaintiff, Tamika Stewart of her property without due process and just
        compensation as secured to her by the Constitutions and laws of the United States
        and New York and to otherwise "chill" this Plaintiff from otherwise exercising
        her rights under the Constitution and law.

69.     The acts complained of deprived the Plaintiff, Tamika Stewart of her rights:

        a.      Not to threaten and intimidate private citizens, such as the Plaintiff,
                Tamika Stewart, with hardship, retaliation and retribution for her reporting
                damages to her door and locks resulting for Defendants' forced entry into
                her private dwellings, in this case "Apartment 4B", without reasonable or
                probable cause to do such conduct;

        b.      Not to deprive her of her property without due process of law and just
                compensation; and,

        c.      To receive equal protection under the law.

70.     All of the aforementioned acts of defendants, their agents, servants and
        employees, were carried out under the color of state law.

-15-

71.     As a result of the foregoing conduct by Defendants herein, the Plaintiff, Tamika
        Stewart has been damaged in an amount to be determined by this Court, but not
        less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in
        the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the
        individual defendants.

### PLAINTIFF TAMIKA STEWART'S THIRD CLAIM FOR RELIEF
(*Monell* Claim Against Defendant City)

72.     The Plaintiff, Tamika Stewart repeats and realleges each and every allegation in
        paragraphs "1" to "51" , "53" to "61" and "63" to "71" with the same force and
        effect as if herein more fully set forth.

73.     Defendant City was obligated to provide rules, regulations and training
        concerning safe processes and procedures for members of Defendant NYPD in
        conducting and handling the entry into the dwellings of private citizens, including,
        but limited to the Plaintiff, Tamika Stewart herein.

74.     Defendant City was obligated to provide rules, regulations and training
        concerning safe processes and procedures for members of the NYPD in
        responding and handling claims of private citizens, including but not limited to
        the Plaintiff, Tamika Stewart herein, regarding claims for entry into her  private
        dwellings by members of the NYPD, and responding to claims for damages as a
        result of such entry.

75.     Defendants City, as responsible for the policies, practices and/or customs of the
        NYPD, acted with deliberate indifference to the rights of those who come into
        contact with the NYPD by failing to:

-16-

a.  Properly train, screen and supervise its employees and particularly members of the NYPD;

b.  Adequately monitor NYPD Officers in entering the dwellings of members of the public, including the Plaintiff, Tamika Stewart's "Apartment 4B" herein, so as to avoid the use of improper entry into her dwellings;

c.  Adequately monitor NYPD Officers in entering the dwellings of members of the public, including the Plaintiff, Tamika Stewart's "Apartment 4B" herein, so as to avoid the use unnecessary and improper use of force so as to avoid damage in entering into her dwellings;

d.  Require members of the NYPD, including the Defendant Police Officers herein, avoid using disparate force and treatment and threats against minority members, including persons of African-American descent such as the Plaintiff herein.

76.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

77.  The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant City and NYPD all under the supervision of ranking officers of said department.

78.  The foregoing customs, policies, usages, practices, procedures and rules of Defendant City and/or the NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff, Tamika Stewart.

79.  The foregoing customs, policies, usages, practices, procedures and rules of Defendant City and/or the NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, Tamika Stewart herein.

80. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the moving force behind the constitutional violations suffered by the Plaintiff, Tamika Stewart herein.

81. As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendant City and/or the NYPD, the Plaintiff, Tamika Stewart was subjected to unlawful and excessive damages and violations of her constitutional rights, as well as conduct designed and intended to "chill" this Plaintiff's exercise of her rights under the Constitution and Laws of the United States and the State of New York.

82. The individual Defendant Police Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate Police Officers, and were directly responsible for the violation of the Plaintiff, Tamika Stewart's constitutional rights.

83. The individual Defendant Police Officers, by their conduct, deprived the Plaintiff, Tamika Stewart of her Federally protected rights, including, but not limited to, the right:

    a. To be free from warrantless entry into her dwelling, particularly "Apartment 4B";

    b. To be free from summary punishment imposed upon her without due process;

    c. To be free from excessive force imposed upon her property;

    d. To be free from conduct designed and intended to "chill" her rights; and,

e.      To receive equal protection under the law.

84.     As a result of the foregoing, the Plaintiff, Tamika Stewart sustained, *inter alia*, violation of her right to property and privacy of her dwelling, emotional distress, embarrassment, humiliation, deprivation of her constitutional rights and is entitled to compensatory and punitive damages in an amount to be determined by trial.

**PLAINTIFF TAMIKA STEWART'S FOURTH CLAIM FOR RELIEF**
**(First Supplemental Claim Against Municipal Defendants)**

85.     The Plaintiff, Tamika Stewart repeats and realleges each and every allegation in paragraphs "1" to "51" , "53" to "61", "63" to "71" and "73" to "84" with the same force and effect as if herein more fully set forth.

86.     The Plaintiff asserts Supplemental Jurisdiction over claims arising under New York law, 28 USC § 1367.

87.     The Supplemental claims fall within one or more of the exceptions as outlined in New York local law, C.P.L.R. § 1602.

88.     Defendant City and/or the NYPD by their employees, agents and/or servants committed trespass and otherwise used excessive force against the Plaintiff, Tamika Stewart's apartment.

89.     As a result of the individual Defendant Police Officers' conduct, the Plaintiff, Tamika Stewart has suffered damages, including mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

90.     As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS as against the defendants.

### PLAINTIFF TAMIKA STEWART'S FIFTH CLAIM FOR RELIEF
**(Second Supplemental Claim Against Municipal Defendants)**

91.     The Plaintiff, Tamika Stewart repeats and realleges each and every allegation in
paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84" and "86" to "90"
with the same force and effect as if herein more fully set forth.

92.     Defendant City and/or the NYPD failed to properly trained, retained, assigned and
supervised all members of said its Police Department, including the individual
Defendant Police Officers named above.

93.     Due to the failure of Defendant City and/or the NYPD to properly train all
members of said Police Department, including the individual Defendant Police
Officers, the Plaintiff, Tamika Stewart suffered mental injury, pain and trauma,
together with embarrassment, humiliation shock, fright, and loss of freedom and is
entitled to compensatory damages in an amount to be determined at Trial.

94.     As a result of Defendants' conduct and negligence, the Plaintiff has been damaged
in an amount to be determined by this Court, but not less than ONE MILLION
($1,000,000.00) DOLLARS as against the defendants.

### PLAINTIFF BERNARD WASHINGTON'S FIRST CLAIM FOR RELIEF
**(Violation of Civil Rights, 42 USC § 1983)**

95.     The Plaintiff, Bernard Washington repeats and realleges each and every allegation
in paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84", "86" to "90"
and "92" to "94" with the same force and effect as if herein more fully set forth.

96.     All of the above Defendant Police Officers, by their foregoing acts, intentionally
and willfully acted jointly and severally under color of law, statute, ordinance,

regulations, customs and practice of the State of New York, to deprive the

Plaintiff, Bernard Washington of his rights, privileges and immunities secured to

him by the Constitutions and laws of the United States and New York.

97. All of the aforementioned acts of defendants, their agents, servants and

employees, were carried out under the color of state law.

98. The Plaintiff, Bernard Washington was deprived his rights, privileges and

immunities guaranteed to citizens of the United States by the First, Fourth, Fifth,

and Fourteenth Amendments to the Constitution of the United States of America,

in violation of 42 U.S.C. § 1983 by Defendants' unlawful warrantless entry and

his subsequent arrest inside "Apartment 4B" without consent or permission.

99. The acts complained of were carried out by the aforementioned individual

Defendants in their capacities as Police Officers, with all the actual and/or

apparent authority attendant thereto.

100. The acts complained of were carried out by the individual Defendants as police

officers, pursuant to the customs, usages, practices, procedures, and the rules of

Defendants City under the supervision of ranking officers of said department.

101. Defendants, collectively and individually, while acting under color of state law,

engaged in conduct which constituted a custom, usage, practice, procedure or rule

of the respective municipality/authority, forbidden by the U.S. Constitution.

102. The acts complained of deprived the Plaintiff, Bernard Washington of his

Constitutional Rights to be free from searches and seizures while present inside

"Apartment 4B" unless Defendants had a warrant.

-21-

103.   The foregoing violations of the Plaintiff, Bernard Washington's Constitutional

rights were undertaken under color of law, statutes, regulations and Constitution

of the State of New York.

104.   As a result of the foregoing conduct by Defendants herein, the Plaintiff, Bernard

Washington has been damaged in an amount to be determined by this Court, but

not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages

in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the

individual defendants.

## PLAINTIFF BERNARD WASHINGTON'S SECOND CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983)

105.   The Plaintiff, Bernard Washington repeats and realleges each and every allegation

in paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84", "86" to "90"

and "92" to "94" and "96" to "104" with the same force and effect as if herein

more fully set forth.

106.   As a result of Defendants' aforementioned conduct, the Plaintiff, Bernard

Washington was subjected to an illegal, improper and false arrest by the

individual Defendant Police Officers and taken into custody and caused to be

falsely imprisoned, detained, confined, incarcerated and prosecuted by the

defendants in criminal proceedings, without any reasonable nor probable cause,

privilege or consent under the U.S. and New York Constitutions.

107.   As a result of the foregoing, the Plaintiff, Bernard Washington sustained, *inter*

*alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation

of his constitutional rights and has been damaged in an amount to be determined

at trial. As a result of the foregoing conduct by Defendants herein, the Plaintiff, Bernard Washington has been damaged in an amount to be determined by this Court. As a result of the foregoing conduct by Defendants herein, the Plaintiff, Bernard Washington has been damaged in an amount to be determined by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the individual defendants.

## PLAINTIFF BERNARD WASHINGTON'S THIRD CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983)

108. The Plaintiff, Bernard Washington repeats and realleges each and every allegation in paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84", "86" to "90" and "92" to "94", "96" to "104" and "106" to "107" with the same force and effect as if herein more fully set forth.

109. As a result of the foregoing, the Plaintiff, Bernard Washington was subjected to an illegal and improper search and seizure from a lawful residential dwelling without warrant or consent.

110. The foregoing unlawful search and seizure violated the Plaintiff, Bernard Washington's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution and Article I, Section 6 of the New York Constitution.

111. As a result of the foregoing, the Plaintiff, Bernard Washington sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and has been damaged in an amount to be determined

by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the individual defendants.

### PLAINTIFF BERNARD WASHINGTON'S FOURTH CLAIM FOR RELIEF
(Violation of Civil Rights, 42 USC § 1983)

112.   The Plaintiff, Bernard Washington repeats and realleges each and every allegation in paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84", "86" to "90" and "92" to "94", "96" to "104", "106" to "107" and "109" to "111" with the same force and effect as if herein more fully set forth.

113.   Defendants, including Defendant Arresting Officers willfully misrepresented and falsified evidence before the District Attorney.

114.   Defendants, including Defendant Arresting Officers did not make a complete and full statement of facts to the District Attorney.

115.   Defendants, including Defendant Arresting Officers withheld exculpatory evidence from the District Attorney.

116.   The individual Defendant Arresting Officers were directly and actively involved in the initiation of criminal proceedings against the Plaintiff, Bernard Washington.

117.   The individual Defendant Arresting Officers lacked probable cause to initiate criminal proceedings against the Plaintiff, Bernard Washington.

118.   The individual Defendant Arresting Officers lacked probable cause to initiate criminal charges against the Plaintiff, Bernard Washington concerning his resisting arrest.

119. The individual Defendant Arresting Officers acted with malice in initiating criminal proceedings against the Plaintiff, Bernard Washington.

120. The Defendant Arresting Officers were directly and actively involved in the continuation of criminal proceedings against the Plaintiff, Bernard Washington.

121. Defendants lacked probable cause to continue criminal proceedings against the Plaintiff, Bernard Washington.

122. Defendants acted with willful malice in continuing criminal proceedings against the Plaintiff, Bernard Washington.

123. The individual Defendant Police Officers misrepresented and falsified evidence throughout all phases of the criminal proceedings.

124. Notwithstanding Defendants' false statements and fraudulent conduct, the criminal proceedings were terminated in Mr. Washington's favor on September 16, 2014 when all the charges against him were dismissed, **Exhibit 'G'**.

125. As a result of the foregoing, the Plaintiff, Bernard Washington sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and has been damaged in an amount to be determined by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS as against the individual defendants.

### PLAINTIFF BERNARD WASHINGTON'S FIFTH CLAIM FOR RELIEF
(*Monell* Claim Against Defendants City)

126. The Plaintiff, Bernard Washington repeats and realleges each and every allegation in paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84", "86" to "90"

and "92" to "94", "96" to "104", "106" to "107" and "109" to "111" and "113" to "125" with the same force and effect as if herein more fully set forth.

127.    Defendant City was obligated to provide rules, regulations and training concerning safe processes and procedures for members of the NYPD in conducting and handling the entry into the dwellings of private citizens, including, but limited to the Plaintiff, Bernard Washington herein.

128.    Defendant City was obligated to provide rules, regulations and training concerning safe processes and procedures for employees of Defendant City and members of the NYPD in responding and handling claims of private citizens, including but not limited to the Plaintiff, Bernard Washington herein, regarding claims for entry into his private dwellings by members of the NYPD, and the use of force.

129.    Defendant City was responsible for the policies, practices and/or customs of the NYPD, acted with deliberate indifference to the rights of those who come into contact with Defendant City through the NYPD by failing to:

a.    Properly train, screen and supervise;

b.    Adequately monitor NYPD Officers in entering the dwellings of members of the public, including the Plaintiff, Bernard Washington's "Apartment 4B" herein, so as to avoid the use of improper entry into his dwellings;

c.    Adequately monitor NYPD Officers in entering the dwellings of members of the public, including the Plaintiff, Bernard Washington's "Apartment 4B" herein, so as to avoid the improper entry into such dwelling without warrant;

d.    Require members of Defendant City employed in the NYPD, including the Defendant Police Officers herein, to not use disparate force and treatment

-26-

against minority members, including persons of African-American descent such as the Plaintiff herein.

130.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

131.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant City through the NYPD all under the supervision of ranking officers of said department.

132.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant City with the NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff, Bernard Washington.

133.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant City with the NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, Bernard Washington herein.

134.    The foregoing customs, policies, usages, practices, procedures and rules of Defendant City through the NYPD were the moving force behind the constitutional violations suffered by the Plaintiff, Bernard Washington herein.

135.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendant City through the NYPD, the Plaintiff, Bernard Washington was subjected to unlawful and excessive damages and violations of his rights.

-27-

136.  The individual Defendant Police Officers, collectively and individually, while
      acting under color of state law, acquiesced in a pattern of unconstitutional conduct
      by subordinate Police Officers, and were directly responsible for the violation of
      the Plaintiff, Bernard Washington's constitutional rights.

137.  The individual Defendant Police Officers, by their conduct, deprived the Plaintiff,
      Bernard Washington of his Federally protected rights, including, but not limited
      to, the right:

      a.  To be free from warrantless entry into "Apartment 4B";

      b.  To be free from arrest without warrant while within "Apartment 4B" and
          to otherwise be free from excessive force imposed upon his person; and,

      c.  To receive equal protection under the law.

138.  As a result of the foregoing, the Plaintiff, Bernard Washington sustained, *inter
      alia*, violation of his right to property and privacy of "Apartment 4B", emotional
      distress, embarrassment, humiliation, deprivation of her constitutional rights and
      is entitled to compensatory and punitive damages in an amount to be determined
      by this Court, but not less than TWO MILLION ($2,000,000.00) DOLLARS and
      punitive damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS
      as against the individual defendants.

### PLAINTIFF BERNARD WASHINGTON'S SIXTH CLAIM FOR RELIEF
#### (Supplemental Claim Against Municipal Defendants)

139.  The Plaintiff, Bernard Washington repeats and realleges each and every allegation
      in paragraphs "1" to "51" , "53" to "61", "63" to "71", "73" to "84", "86" to "90"
      and "92" to "94", "96" to "104", "106" to "107" and "109" to "111" and "113" to

"125" and "127" to "138" with the same force and effect as if herein more fully
set forth.

140.    The Plaintiff asserts Supplemental Jurisdiction over claims arising under New
York law, 28 USC § 1367.

141.    The Supplemental claims fall within one or more of the exceptions as outlined in
New York local law, C.P.L.R. § 1602.

142.    On March 15, 2014, Defendant Surajbali commenced a criminal proceeding
against the Plaintiff, Bernard Washington.

143.    Defendant Surajbali knowingly lacked probable cause to commence said criminal
proceeding against the Plaintiff, Bernard Washington.

144.    Defendant Surajbali knowingly lacked probable cause to assert and claim in said
criminal proceeding against the Plaintiff, Bernard Washington regarding the crime
of resisting arrest in violation of New York Penal Law § 205.30

145.    Defendant Surajbali was motivated by actual malice in commencing said criminal
proceeding against the Plaintiff, Bernard Washington.

146.    Defendant Surajbali was motivated by actual malice to charging the Plaintiff,
Bernard Washington with the crime resisting arrest in violation of New York
Penal Law § 205.30.

147.    On September 16, 2014, the criminal prosecution against the Plaintiff, Bernard
Washington was terminated in his favor.

148.   As a result of the aforementioned conduct, the Plaintiff, Bernard Washington
       suffered physical and mental injury, together with embarrassment, humiliation,
       shock, fright, and loss of freedom.

149.   As a result of the foregoing, the Plaintiff, Bernard Washington sustained *inter
       alia*, emotional distress, embarrassment and humiliation, loss of liberty, and
       deprivation of his constitutional rights.

150.   As a result of the foregoing, plaintiff is entitled to compensatory and punitive
       damages in an amount to be determined by this Court, but not less than TWO
       MILLION ($2,000,000.00) DOLLARS.

WHEREFORE, Plaintiff respectfully prays this Court for a judgment as follows:

A)   ONE MILLION ($1,000,000.00) DOLLARS compensatory damages on
     the First, Second, Third, Fourth and Fifth Claims for Relief on behalf of
     the Plaintiff, Tamika Stewart as against Defendants and that said judgment
     be jointly and severally on behalf of the Plaintiff;

B)   ONE MILLION ($1,000,000.00) DOLLARS punitive damages on the First
     and Second  Claims for Relief on behalf of the Plaintiff, Tamika Stewart
     as against Defendant Police Officers, jointly and severally on behalf of the
     Plaintiff;

C)   TWO MILLION ($2,000,000.00) DOLLARS compensatory damages on
     the First, Second, Third, Fourth, Fifth and Sixth Claims for Relief on
     behalf of the Plaintiff, Bernard Washington as against Defendants and that
     said judgment be jointly and severally on behalf of the Plaintiff;

D)   TWO MILLION ($2,000,000.00) DOLLARS punitive damages on the
     First, Second, Third, Fourth and Fifth Claims for Relief on behalf of the
     Plaintiff, Bernard Washington as against Defendant Police Officers, jointly
     and severally on behalf of the Plaintiff; and,

E)   Reasonable attorneys fees pursuant to 42 U.S.C. §§ 1988 in an amount to
     be determined by this Court.

as well as costs, fees disbursements.

Dated: New York, N.Y.
       June 30, 2016

                              Yours, etc.,
                              MATTHEW A. KAUFMAN, ESQ.

                              By: Matthew A. Kaufman  (MK 0598)
                              Attorney for Plaintiff
                              225 Broadway - Suite 1606
                              New York, N.Y. 10007
                              Tel. No. (212) 619-2200
                              MAK File No.     15,452.301
                              makaufman01@yahoo.com

-31-